******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ESPINOSA, J., dissenting. Today's majority decision turns back the clock to a time when victims of sexual assault, whether they were children or adults, were subjected at trial to undue harassment, prejudice, fear of embarrassment, and a violation of their sexual privacy. This decision eviscerates the rape shield statute with the unfortunate consequence that defendants can now circumvent the very protections which the statute was intended to provide by asserting unsubstantiated self-serving claims and conjecture. This is a particularly troubling outcome for children with a prior history of being sexually abused. Therefore, I respectfully dissent.

I conclude that the trial court, after affording the defendant, Christopher Shaw, with multiple opportunities to present a sufficient offer of proof and holding an evidentiary hearing, correctly determined that the testimony and questioning sought by the defendant was not relevant and was more prejudicial than probative. Because I do not dispute the majority's recitation of the facts that the jury reasonably could have found, I do not repeat them here.[1] I do, however, question the majority's legal conclusions. In deciding that the defendant's proposed testimony and the proposed questioning of A, the victim, K, her older brother, and B, their mother,[2] were relevant and more probative than prejudicial, the majority glosses over the pretrial proceedings and legal arguments that transpired outside the presence of the jury and disproportionately focuses on the trial court's misplaced reliance on *State* v. *Rolon*, 257 Conn. 156, 777 A.2d 604 (2001). By ignoring the procedural posture that led the court to its legal conclusion, the majority overlooks the reality that, notwithstanding his motions and arguments, the defendant had not proffered any admissible evidence that A had engaged in sexual intercourse with K three days prior to the defendant's arrest or that A and B were attempting to cover up the defendant's allegations of said conduct.

The defendant made three offers of proof throughout the pretrial and trial proceedings. The first offer was made by the defendant in connection with a motion to present evidence of the prior sexual conduct of A and resulted in a hearing. The second offer of proof was made during the cross-examination of B, and the final offer of proof was made by way of the defendant's motion for reconsideration. A close look at these proceedings leads to the conclusion that the defendant failed to overcome the burden imposed on him by the rape shield statute.

I

The defendant first sought the introduction of evi-

dence of prior sexual conduct of A pursuant to the rape shield statute, General Statutes § 54-86f,[3] through a motion that he filed on February 27, 2008. In that motion, the defendant sought a hearing so that he could "present evidence concerning the prior sexual history of the alleged complainant, [A], to be used in either the defendant's case-in-chief or in rebuttal following the state's presentation on direct or rebuttal, of sexual injuries sustained by . . . [A], which [the state] claims resulted from this incident, in order to provide an alternate source for such injuries and as evidence relating to the motive of several witnesses to fabricate." In support of his motion, the defendant asserted that an emergency room medical report and expert disclosures by the state identified A's injuries as having occurred recently, that discovery indicated that A had stated that the defendant and B were not getting along because the defendant had made allegations that A and K recently had been engaged in sexual misconduct, that a video camera had been seized by the police "which may show the inside of the home on the evening of the alleged offense," and that the fact that A and B knew the defendant had made allegations of inappropriate sexual conduct between A and K gave them a motive to fabricate evidence against the defendant to prevent his claim from being revealed.

That same day, when the parties and the court were discussing outstanding motions, the trial court marked as a court exhibit the discovery packet that defense counsel had received the previous day, which had formed the basis for the defendant's motion. The packet contained a report from a social worker who interviewed A following the assault, which stated, "[B] advised [the] police that [the defendant] had been telling [B] she needs to watch her fifteen year old son [K] as [the defendant] believed [K] and [A] were having intercourse. As a result, a video camera was placed in the home so that [K] and [A] could be watched. However [the defendant] is the only one in the home [who] knows how to work the video camera. According to [the] police report there was no evidence of [A] and [K] being sexually involved. However the video camera did show [the defendant] turning off the camera. . . . [A] denies [ever] being touched by [K]. [A] stated [K] and [the defendant] do not get along because [the defendant] has alleged that [K] is touching [her]." The discovery packet also contained a referral to the Child Sexual Abuse Clinic made by the social worker that stated, "[the defendant] has alleged that [A's] older sibling [K] was having intercourse with [A] however [A] denies."

The next day, on February 28, 2008, defense counsel Auden Grogins argued the motion. She asserted that an emergency room report written by Mark Cicero, a physician, disclosed that A had recent vaginal tears. Grogins represented that the defendant's proposed testimony and other evidence would establish that another

party was responsible for the injuries and that B was investigating the defendant's allegations of sexual intercourse between A and K. Grogins asserted that the defendant "would testify that he caught [A and K] engaging in sexual relations and that he told [B] . . . of this suspected activity and that . . . with [the] permission of [B] the defendant . . . set up a video . . . to tape-record any inappropriate activity with [A and K] . . . ." Grogins maintained that the defendant would assert that the inappropriate activity that was ongoing up until the time of this incident or within forty-eight hours of this incident was the cause of A's vaginal tears. She also argued that recently disclosed discovery indicated that a social worker[4] had reported that A acknowledged that the defendant was not getting along with others in the household and that B was investigating the defendant's allegations of sexual contact between A and K. Grogins asserted that this information was admissible under the first and fourth exceptions to the rape shield statute because it was relevant to the defendant's theory that A's fabrication of the allegations against the defendant was motivated by her desire to prevent the discovery that she and K were having sexual intercourse.[5]

The state argued that nothing proffered by defense counsel was relevant to the source of A's injury. It noted that Grogins' failure to identify the time period in which A and K had allegedly been engaged in sexual intercourse prevented the state from establishing whether the alleged sexual acts between A and K were too remote in time from the charged incident. The state further argued that nothing on the videotape, which it previously represented would not be admitted during trial because it did not contain any relevant footage, suggested that A and K were having sexual intercourse, and that A had never claimed to have had sexual intercourse with K, only with a different brother. It stated that the defendant was the only person who had claimed that A and K were having sexual intercourse and that he offered no proof to show that it actually occurred. The state then argued that the defendant had failed to satisfy the five factor test set forth in *State* v. *Rolon*, supra, 257 Conn. 183–84.

Grogins responded that, to satisfy the source of injury exception, the defendant would testify that he had observed recent sexual activity between A and K. When the court asked if the defendant wanted a hearing at that time, Grogins pointed to the social worker's report, which indicated that A had stated that K and the defendant did not get along because the defendant alleged that K was touching A. The court then asked defense counsel if K was ready to be offered as a witness to support their theory, and Grogins responded that the defendant would be the only one to offer that evidence.

Defense counsel Steven Jacobson then stated that they were not prepared for a hearing at that time. Jacob-

son argued that "the witnesses we would need to present, which would include [B], will be here for the trial, and it . . . wasn't presented to us that we should appear with witnesses this afternoon, ready . . . to present on this issue, because as the rule itself says, it talks about basically having these hearings, in effect, during trial . . . ." He then asked, based on the offer of proof, that the court allow the witnesses to testify before the jury, then hold the hearing outside the presence of the jury and make a decision at that time. The state also asked that any questions related to the offer of proof be asked outside the presence of the jury. The court stated that it was prepared to rule on the motion at that time, but that the parties could "always revisit issues based upon certain evidence during the course of the trial . . . ." It then asked if defense counsel wanted the court to hold its decision on any particular issue until it arose.

At that point, the state interjected, stating that Cicero, the physician who examined A, would not be testifying until after A and B had testified. Jacobson expressed a concern that they would not be able to cross-examine A and B regarding the defendant's theory that K was the source of A's injuries because there would not be any evidence concerning A's injuries when they testified. When the court asked defense counsel what they wanted the court to do, Jacobson reiterated that their offer of proof was that the defendant would testify that he caught A and K in sexually inappropriate conduct within several days before the incident. When the court indicated that defense counsel could conduct the hearing at that time with the defendant as a witness, Jacobson resisted, stating "*our problem is, putting the defendant on now doesn't get us there because we need what [A] would say and [B] would say to . . . make our proof, which is why I believe we should do it through the court . . . .*" (Emphasis added.) The court asked Jacobson if the defendant was the source of the information regarding any sexual improprieties between A and K. Jacobson responded that the defendant was the source of the information, but that A and B *might be* a source of information as well. The court responded, "it was advanced to this court by way of argument, several arguments, that [the defendant] was the one who . . . identified this issue among the siblings, and as a result, whatever was set up, he set it up, and you indicate [that] there's no tapes to support any, at least videotaping any conduct, and you ask the court now to make a finding that . . . something has happened clearly . . . . I am not persuaded at this time that that evidence is going to be allowed."

The court again asked if defense counsel was ready to proceed on their motion, noting that the motion had asked for the hearing and that hearings usually require evidence from the witness stand. They indicated that they were not ready because their perception was that

the hearing would take place during trial. The court told defense counsel to proceed on their motion. After initially denying their request for additional time, the court granted their request for a short break to allow defense counsel an opportunity to explain to the defendant what was happening.

After the break, the defendant elected to proceed on his motion and testified to the following. Three days prior to his arrest, when the defendant had come out of the bathroom at B's apartment, he saw A and K in the living room in an awkward position, and there appeared to be inappropriate touching. In an immediate response, the defendant pressed "record" on his cell phone and left it on the table in front of the doorway to the kitchen while he took a shower. After his shower, the defendant listened to the recording, which "sounded like intercourse, moaning, sex," then confronted A with it. After she listened to the recording, A told the defendant that a couple of months prior, K had come into her room and had had sexual intercourse with her, that they had been having sexual intercourse ever since, and that they had been having sexual intercourse while the defendant was in the shower.[6] When B returned home from work, the defendant told B what he had seen and let her listen to the recording. When B confronted A, however, she denied having sexual intercourse with K. Afterward, B spoke to the defendant and they purchased a surveillance camera.

After the defendant concluded his testimony, the court asked if there was any additional testimony that either party wanted to offer. The state notified the court that the recordings from the defendant's cell phone had been tested and that the results did not match the defendant's claim, but that a laboratory technician was not available to testify, only the state's investigator, who spoke to someone from the laboratory on the telephone. Defense counsel objected because they did not have the test results, and the state subsequently conceded that it had no evidence to offer.

Counsel then made closing arguments. Jacobson argued that the defendant's testimony about A's statement that she had had sexual intercourse that day with K was relevant to both subdivisions (1) and (4) of § 54-86f, the rape shield statute. A's statement was relevant to the exception in subdivision (1) of § 54-86f because it explained the medical evidence, which stated that the injuries to A were up to seventy-two hours old. Defense counsel further argued that the defendant's testimony was relevant to the exception in subdivision (4) of § 54-86f because A "now knows, according to [the defendant], that three days before this incident, where we would claim she fabricated the sexual assault, that [the defendant] ha[d] gotten an admission from her that she [admitted] sexual assault by [K]. That would be a motive of [A] to want [the defendant] to be arrested

and out of the household. [B] also has a similar motive." Jacobson argued that the questions sought to be asked were admissible because the defendant could impeach the testimony of A and B if they contradicted the defendant's claim.

The state argued that the defendant had not satisfied his burden because he had not demonstrated that the prior act had clearly occurred. The state continued: "According to the defendant, he saw somebody in an awkward position and an inappropriate touching. There was no specificity on what acts he's claiming occurred, no acts at all, except [that] there was an inappropriate touching and in an awkward position. That's the only thing he . . . said that happened. . . . And [A], according to the defendant, said certain things; however, [she] has denied it to all law enforcement since the day he claimed this at the scene. . . . I think . . . the two main arguments [are] that the prior acts did not clearly [occur], because everybody's denying it. It's the defendant offering self-serving hearsay as to what he can testify to on the stand. [A] has never claimed any of this. And . . . we're also touching upon an issue that the rape shield statute was intended to [protect]. The legislative intent of that statute was to not embarrass a victim of whatever age, to just throw in anything that you think could possibly be brought up to embarrass her. The statute was . . . intended to prevent that, and the probative value of the evidence that they submit must outweigh its prejudicial effect. And [the state does not] believe that the evidence [defense counsel is] intending to admit, that has no basis except what the defendant claims, is [anything] but prejudicial to the victim in this case."

The next day, on February 29, 2008, prior to the start of evidence, the court denied the motion. The court found that, based on the defendant's testimony of what he saw and did not see, the facts did not support a continuing evidentiary hearing. It found that the prior acts had not clearly been defined, that they did not resemble the present case and that they were not clearly relevant to a material issue. The court continued: "[T]he evidence is not . . . necessary to the defendant's case . . . based upon the facts presented . . . . And certainly, the probative value of the evidence does not outweigh its prejudicial effect. We have an . . . eleven year old child and . . . inferentially, the court has [been] asked pursuant to § 54-86f to have a discussion in this court about sibling sex. That will not be allowed, it is not relevant. There is no reference to sibling sex among these children unless you say, Judge, I have to ask it. I will excuse the jury, and I'll hear your offer at the time."

Although not discussed by the majority or disputed by the parties, it is important to note, as will become apparent, that the defendant's initial offer of proof, by

way of his written motion and oral argument, satisfied his preliminary burden.[7] "In the first step of [the] two part process [set forth in § 54-86f], the defendant bears the burden of showing that the proffered evidence overcomes the presumption, inherent in § 54-86f, that evidence of the sexual conduct of a rape victim is inadmissible and satisfies the statute's requirement that only evidence relevant to the case, rather than evidence relevant merely to demonstrate the unchaste character of the victim, be admissible." *State* v. *Smith*, 280 Conn. 285, 296, 907 A.2d 73 (2006). "The showing must be sufficient to enable the trial court to make an informed ruling in connection with the exercise of its discretion on the issue. That showing must be made as part of the offer of proof as a prerequisite to obtaining an evidentiary hearing to determine the admissibility of evidence of the victim's prior sexual conduct." *State* v. *Manini*, 38 Conn. App. 100, 114, 659 A.2d 196, cert. denied, 234 Conn. 920, 661 A.2d 99 (1995).

"Offers of proof are allegations by the attorney . . . in which he represents to the court that he could prove them if granted an evidentiary hearing. . . . The purpose of an offer of proof has been well established by our courts. First, it informs the court of the legal theory under which the evidence is admissible. Second, it should inform the trial judge of the specific nature of the evidence so that the court can judge its admissibility. Third, it creates a record for appellate review. . . . Additionally, an offer of proof should contain specific evidence rather than vague assertions and sheer speculation." (Citation omitted; internal quotation marks omitted.) *State* v. *Martinez*, 295 Conn. 758, 771, 991 A.2d 1086 (2010). The offer of proof can be made by the testimony of a witness in the absence of the jury or by a good faith representation by counsel of what the witness would say if questioned. See C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 1.29.4, p. 77.

In the initial motion and during argument, the defendant proffered documentary and testimonial evidence to support his position that A and K had engaged in sexual intercourse three days prior to the incident for which he was charged and that his revelation of this inappropriate sexual contact between the siblings prompted A and B to fabricate the story that the defendant had sexually assaulted A so that they could hide the accusations.[8] In the motion, he identified a medical report and expert witness disclosure that indicated that A's injuries had occurred within three days of the incident, and a social worker's report which stated that B had informed her that the defendant had made such accusations, as well as making the representation that a surveillance camera had been purchased by B to monitor her children's behavior. During argument on the motion, defense counsel represented that the defendant would testify that he caught A and K having "sexual

relations." This proffer was sufficient to satisfy the first step in the two step process and necessitated the evidentiary hearing, which the court held.

Having established that the offer of proof was sufficient to entitle the defendant to a hearing, I nevertheless disagree with the majority's conclusion that the defendant's proposed testimony, submitted during the hearing, or the proposed questioning of A, K and B were both relevant and more probative than prejudicial.[9] The purpose of a hearing pursuant to the rape shield statute "is to assist the trial court in making its determination regarding whether the evidence is relevant to the case and falls within one of the statute's exceptions, and whether its probative value outweighs the prejudicial impact on the victim." *State* v. *Smith*, supra, 280 Conn. 298. Moreover, "a clear statement of the defendant's theory of relevance is all important in determining whether the evidence is offered for a permissible purpose." (Internal quotation marks omitted.) *State* v. *Cecil J.*, 291 Conn. 813, 825, 970 A.2d 710 (2009).

I take issue with the majority's analysis primarily for two reasons. First, in making its determination of the admissibility of the defendant's testimony pursuant to the rape shield statute, the majority does not limit its analysis to testimony that would be admissible under the rules of evidence. The purpose of the rape shield statute is to prohibit the introduction of otherwise *admissible* evidence of the sexual conduct of a victim because it is highly inflammatory. Rather than create an alternate vehicle for admissibility, therefore, the rape shield statute imposes an additional bar to the admission of proposed evidence that falls under its purview. The rape shield statute does not suspend the rules of evidence to allow, for example, inadmissible hearsay, just because such evidence would be relevant or more probative than prejudicial to an issue at trial. Nevertheless, the majority implicitly does just that.

In its recitation of the defendant's relevant testimony, the majority cites his statements that "he had observed A and K in an awkward position, had seen them inappropriately touching, had heard 'moaning' and other sounds on the cell phone recording suggesting they were having sexual intercourse, had been told by A that she and K were 'having sex' while the defendant was in the shower, and, after informing B about what he had seen and heard, had accompanied B to a department store where she purchased a video surveillance camera."[10] The majority fails to acknowledge, although argued by the parties and noted by the court in its ruling, that A's alleged admission that she and K had been having sexual intercourse is inadmissible hearsay.[11] Indeed, the majority relies on this inadmissible hearsay to determine that the proposed testimony was both relevant and more probative than prejudicial.[12] Such inadmissible hearsay should not be considered by the trial court or this court

in determining whether the defendant proffered any *admissible* evidence of the prior sexual conduct of A pursuant to the rape shield statute. The only evidence that should be considered by a court when determining the admissibility of the prior sexual conduct of a victim pursuant to the rape shield statute is evidence that also would be admissible pursuant to the rules of evidence.[13]

My second issue with the majority opinion is that it combines, as did the defendant, all of the testimony as it pertains to both exceptions when determining admissibility pursuant to the rape shield statute, rather than considering only the evidence that was applicable to each exception. By doing so, the majority is able to conclude that all of the evidence is relevant and more probative than prejudicial. If, however, one looks at the proposed testimony that would have supported each exception separately, after determining which parts of the proposed testimony would have been admissible pursuant to the rules of evidence, the correct conclusion is that the proposed testimony for each exception was inadmissible under the rape shield statute, albeit for different reasons and, thus, any questioning related to those exceptions was also inadmissible.

Careful scrutiny of the record reveals that there was no relevant evidence submitted to support the defendant's contention that K was the source of A's injuries. In his offer of proof, the defendant proffered that the source of A's injuries was the alleged sexual intercourse that A had engaged in with K three days prior to the defendant's arrest, while he had been showering. Thus, he was required to provide relevant evidence that A and K had engaged in sexual intercourse, not at some undefined time, but during the time that he was in the shower, three days prior to his alleged assault of A. The defendant's testimony pertinent to this exception was that prior to taking his shower, the defendant witnessed A and K in *an awkward position* and that there was *inappropriate touching*. While the defendant was showering, he recorded sounds on his cell phone. After his shower, the defendant listened to the recording and heard sounds that he characterized as moaning and sex.

These statements are not relevant evidence, inferential or otherwise, that A and K had actually engaged in *sexual intercourse* while the defendant was showering. At most, these "facts" support the defendant's position that he merely *believed* that A and K had engaged in sexual intercourse. "Inferences to be drawn from the facts proved must be reasonable and logical, and the conclusions based on them must not be the result of speculation and conjecture." *Palmieri* v. *Macero*, 146 Conn. 705, 708, 155 A.2d 750 (1959). Contrary to what defense counsel proffered during argument on the motion, *the defendant did not testify that he saw A and K engaged in sexual intercourse* or any act resembling sexual intercourse in the time period prior to or after

his shower nor did he describe their appearance, clothing or mannerisms after taking his shower. Moreover, there was no evidence other than the defendant's statements of his conclusions that the purported sounds on the cell phone recording were the sounds of A and K having sexual intercourse. Thus, based on the facts presented during his testimony, any conclusion that A and K were engaged in sexual intercourse while the defendant was showering would be the result of speculation and conjecture.

Moreover, at no point in the proceedings did defense counsel ever proffer that A would testify that she and K had been engaged in inappropriate touching that day, that she had engaged in sexual intercourse that day with K, that she had told the defendant that she and K had engaged in sexual intercourse on that day or that she had heard the cell phone recording. In fact, Jacobson implicitly admitted that he did not know what A's testimony would be and, when presented with the opportunity to present additional witnesses, declined to do so. Because the defendant did not proffer or submit any evidence to corroborate the defendant's testimony regarding the sounds on the cell phone recordings and no other witness testified, the court essentially was left with only the defendant's unsubstantiated beliefs that he had heard noises he associated with sex on his cell phone and that A and K had engaged in sexual intercourse while he was in the shower. Such beliefs were not relevant to the issue of the source of A's injuries, as they did not tend to prove whether A actually had sexual intercourse with K while the defendant was in the shower. See *State* v. *Brauneis*, 84 Conn. 222, 233, 79 A. 70 (1911) (defendant's testimony about his belief regarding complainant's behavior properly excluded, as his belief did not tend to prove complainant engaged in behavior);[14] see also *State* v. *Williams*, 20 Conn. App. 263, 269–70, 565 A.2d 1365 (1989) (court properly excluded questions of whether victim had been sexually active during three days prior to incident where victim and mother testified during hearing that victim was not sexually active but defendant testified that he believed that she was). Although it is true that § 54-86f "encompasses inferential as well as direct evidence of sexual conduct"; *State* v. *Rinaldi*, 220 Conn. 345, 354, 599 A.2d 1 (1991); a defendant's belief about the sexual conduct of a victim does not tend to prove that conduct, and is not, therefore, relevant. Compare id., 354–55 (witness' proposed testimony regarding admissible statements complainant had made and her appearance after exiting woods with third person constitute inferential evidence of sexual conduct); see also *State* v. *Jones*, 8 Conn. App. 44, 48, 510 A.2d 467 (1986) ("§ 54-86f limits proof to evidence of sexual conduct, which phraseology . . . permit[s] only specific instances of conduct and prohibit[s] all proof of reputation or *personal opinion of the victim's sexual conduct*" [emphasis added; internal

quotation marks omitted]).

In addition, none of the documentary evidence relied on by the defendant in his offer of proof actually suggested that A and K had engaged in sexual intercourse at any time or that A would disclose that she and K had sexual intercourse.[15] The social worker's report noted that A denied the defendant's allegations and referenced police reports that stated that there was no evidence of A and K being sexually involved. Thus, even if one could conclude that the defendant's testimony was relevant to his claim that A and K had sexual intercourse while he was in the shower three days prior to his arrest, given the remainder of the evidence that was before the court, these unfounded allegations would have been more prejudicial than probative, and his testimony was simply not sufficient to overcome "the presumption, inherent in § 54-86f, that evidence of the sexual conduct of a rape victim is inadmissible . . . ." *State* v. *Smith*, supra, 280 Conn. 296. Thus, the court did not abuse its discretion in denying the defendant's initial motion under this exception.

With respect to the fourth exception to the rape shield statute, the defendant's theory was that A and B fabricated the allegations against him after he informed them of his discovery that A and K were having sexual intercourse in order to cover up his discovery. The defendant's testimony pertinent to this exception was that he told A and B about his suspicions and that after B had a conversation with A, the defendant and B purchased a video camera to monitor A and K. Although such testimony was relevant to a portion of his theory, that he suspected A and K were having sexual intercourse and that he informed A and B of his suspicions, such evidence was more prejudicial than probative because the rest of his theory was contradicted by the record. Thus, any testimony by the defendant, A, or B on this issue was properly deemed inadmissible.

The contradictory evidence in the record significantly weakens the probative value of the defendant's proposed testimony. As I previously concluded, there was no admissible evidence that A and K had engaged in sexual intercourse three days prior to the defendant's arrest. The state also represented during argument that A had always denied having sexual intercourse with K. Moreover, the social worker's report revealed that both A and B had told the social worker that the *defendant* had made these accusations about A and K having sexual intercourse, and that B had told police officers about the defendant's allegations. If the purpose of accusing the defendant of sexual assault was to cover up the defendant's alleged discovery of A and K having sexual intercourse, it is unlikely that A and B would have repeated his accusations to both police officers and a social worker. See *State* v. *Kulmac*, 230 Conn. 43, 56, 644 A.2d 887 (1994) (concluding that court did not violate

defendant's right to confront witnesses by excluding evidence of prior sexual conduct when record did not support defendant's claim that victims falsely accused him of assaults perpetrated by others in order to shield others from harm where victims disclosed other perpetrators to police, and other perpetrators had been convicted at time of defendant's trial). Given the fact that there was no admissible evidence of A and K engaging in sexual intercourse, and that there was evidence indicating that A and B were not attempting to cover up the defendant's allegations, the defendant's proposed testimony about his alleged discovery and any questions to A and B about his allegations were more prejudicial than probative.[16] Thus, the court did not abuse its discretion in denying the initial motion pursuant to this exception.[17]

II

The defendant's second offer of proof occurred during the cross-examination of B, who was the second witness to testify. During the cross-examination of B, Grogins requested that the jury and B be excused so that she could make an offer of proof. When the court asked what the offer of proof was, Grogins stated: "I want to ask about [the defendant] being concerned about the behavior of the children. I want to ask about the fact that [B] was also concerned about the behavior of her children, without getting into why. And I want to ask about the fact that [B] was so concerned that she went out and bought a video surveillance camera, so she could monitor her children's behavior." When the court asked how such questioning was relevant to B's testimony about what she had seen on the night of the incident, Grogins responded that it implicated her motive, bias and interest to testify against the defendant for making claims about her children. The state then argued that those questions were irrelevant to B's testimony about what she claimed to have witnessed and the court's prior ruling barred the proposed questions. The court ruled that the line of questioning was not relevant.

The court's ruling was proper because the defendant did not make a sufficient offer of proof that warranted a different result. In contrast to his initial offer of proof, when the defendant identified what the proposed testimony would be as well as documentary evidence to support his position, at the second offer of proof, Grogins did not provide the court with anything beyond what had been presented at the hearing. She did not proffer what B's testimony would be. Even though B was on the stand when Grogins asked to make her offer of proof, she never requested a hearing so that B could testify outside the presence of the jury. Rather than providing *any* additional evidence to support the defendant's proffer, Grogins only requested that the court allow her to ask B questions in the presence of the jury.

Because the defendant's proffer did not "inform the trial judge of the specific nature of the evidence so that the court [could] judge its admissibility" or "contain specific evidence rather than vague assertions and sheer speculation"; (internal quotation marks omitted) *State* v. *Martinez*, supra, 295 Conn. 771; the court did not abuse its discretion in denying the defendant's request to question B with respect to the defendant's allegations of sexual intercourse between A and K.

### III

The final offer of proof took place after the direct examination of A, the third witness to testify. Before the cross-examination of A began, on March 3, 2008, the court addressed the defendant's motion to reconsider its rulings with respect to all of his claims initially brought by way of his first motion.[18] The defendant requested permission to testify about his observations of "inappropriate sexual behavior between [A] and [K] within three days of the accusation made against him," about the recorded "sounds of interactions between [A] and [K] three days before the accusation in this case that were consistent with the sound of persons engaging in sexual intercourse," about his confrontation of "[A] with the recording and [A] admit[ting] to [the defendant] that she had just had sexual intercourse with [K] and had also done so in the past," and about him telling "[B] about the clear admission of sexual intercourse." The defendant also requested permission to recall B so that she could be questioned about the defendant's statements to her regarding his confrontation with A and her subsequent actions in arranging for surveillance of the children. He asked to call K and question him about being the source of A's injuries, about his being alone with A during the three days prior to the alleged assault and about what K saw and heard during the date of the alleged assault. The defendant asked for permission to question A about having sexual intercourse with K, about being alone with K during the three days prior to the alleged assault, about her knowledge that the defendant had made accusations that she had had sexual intercourse with K, and about her state of mind as a motive to fabricate because she did not want the defendant to continue making such accusations. Finally, the defendant requested permission to question A and B about A's failure to disclose that she had engaged in sexual intercourse with her oldest brother two years prior, "as evidence of a pattern of covering up interfamilial incest," and about B's request that there be no prosecution of the oldest brother once the conduct was disclosed.

Additionally, in this motion to reconsider, the defendant asserted that his "whole theory of defense is that [A] and [B] contrived the accusation in this case to cover up [the defendant's] discovery that [A] was having sexual intercourse with [K]." He maintained that evi-

dence supporting this contention was that A had covered up being sexually assaulted by a different brother two years prior and that B had chosen to waive prosecution. The defendant also averred that he would present this evidence through his own testimony and the questioning of A, B and K.

During oral argument, Grogins contended that the questioning of the witnesses and the testimony of the defendant were necessary to show that someone else had committed the crime. She reiterated that the defendant's claim was that "[B's and A's] allegations against the defendant . . . [were] fabricated to cover up the . . . ongoing incestual relationship that was taking place with [K] . . . ." The court responded: "Let's have the argument. I've heard the argument and I've heard the basis for that from [the defendant] and the alleged tape and the alleged recording." When defense counsel asked if the court's ruling barred the defendant from calling K to question him about these issues, the court replied, "I'm not barring you from calling anybody. You can call anybody that you like. Testimony in this courtroom must be relevant to the issues at hand, material . . . . I've heard this issue in the past . . . and I want you to place your theory of relevance clearly on this record. I have not heard anything that would support your position that the rape shield statute should afford this court to allow that testimony at this time."

The state also responded: "As far as [this] motion goes, we've heard everything . . . I don't think there's anything new. In fact, we're also now wanting to question [A] about hearsay, about what the defendant said to her, what the defendant thought, and all this other stuff. It's not admissible, Your Honor . . . . This is just the defendant introducing self-serving hearsay in order to shift the focus . . . . I don't believe any of this is admissible."

The court then denied the motion, stating: "There is no evidence coming . . . into this court regarding any incestual relationships with [A] and [K], none. . . . *Now, if you want to bring* [K] *in to make an offer of proof* to preserve it for the appellate record . . . that's up to you . . . . What I've heard does not support in any form or fashion that evidence coming into the courtroom of law as it has any bearing on the issue here at hand, nothing. . . . [T]hat's the rape shield statute and the reason that the legislature has decided to implement the statute. It's clearly a wholesale assault . . . [and] it has no bearing. If it had some relevance, I would allow it. I would. . . . All that is . . . speculation . . . and hearsay and not admissible—even under most evidentiary rulings it wouldn't be admissible." (Emphasis added.)

Grogins then made a record of the questions that she would have asked K and A.[19] With respect to the proposed questions for A, the state argued that "[e]very

question that was just asked is self-serving hearsay aside from the last one. Everything that was just asked is self-serving hearsay on behalf of the defendant. She can't testify as to what the defendant may have said at some other time. There's no exception that fits this, Your Honor. I'm asking that all of [it] be denied." The state also clarified that the court's ruling did not prohibit the defendant from calling anyone as a witness. After defense counsel responded that the questions set forth were not hearsay because they were asking for A's response, the court ruled. It stated: "None of those questions, if proffered in that manner, should be asked in court in front of the jury to this person. None of them. They suggest, at least direct, the attention of the [jury] to areas that this court finds immaterial, irrelevant, confusing, and in no way that support any theory of relevance I have heard from the defense. The rape shield statute protects . . . clearly, those issues you wish to raise. Bias, interest and motive is another issue. I have not heard those—if those questions were asked for bias, interest and motive . . . . [H]ere are the facts. Something happened in that room. The players, as I see it, are three people . . . . Now, if something bears on that, I'll hear it and it will be allowed. I haven't heard any of those questions that bear on that. [B], if you believe her, [A], if they believe her, the person in that room was one . . . male person and identified as your client, period. That's it. Now, whether somebody else was there before [B] got there, I don't know, it's not in evidence, whether somebody did something else before [B] got there on that day, I don't know, that would impact upon whatever issue you claim you're being prohibited from offering, and it is not. Those questions are not to be offered and will not be in this trial on the charge of sexual assault in the first degree as it relates to the evidence I have heard and know of so far, it will not be."

After dealing with other matters, the court returned to the motion one last time. Jacobson reiterated that the defendant's position was that K, rather than the defendant, had caused the injuries to A and that A and B had fabricated the allegations against the defendant to cover up the sexual relationship between A and K. The court repeated its ruling that the evidence was not relevant. It stated that the evidence was immaterial, irrelevant, had no bearing on the trial and would not be allowed.

In his final offer of proof, the defendant failed, once again, to proffer any evidence that would have supported his contention that A and K had been engaged in sexual intercourse or that A and B were attempting to cover up the defendant's accusations. The motion asked to question A, B and K about the alleged events surrounding the defendant's accusations, but did not proffer what the witnesses' testimony would be. During oral argument, Grogins made a record of what questions

she would have asked the witnesses *in the presence of the jury,* but never once disclosed what their testimony would be or asked for a hearing so that the court could evaluate their proposed testimony, even after the court explicitly indicated that K could testify at a hearing outside the presence of the jury.[20] Faced with the absence of any evidence to support the defendant's theory of relevance, the court correctly denied his motion to reconsider.

In short, after the court denied his initial motion, while leaving available to the defendant the opportunity to make additional offers of proof as the trial progressed, the defendant did not provide the court with any evidence, potentially relevant or not, that would have necessitated a change in its ruling. Even though the defendant was given multiple opportunities to provide relevant evidence to support his theory, including specifically stating that the defendant could have a hearing to submit the proposed testimony of K, he failed to do so. Moreover, the defendant did not renew his request during his case-in-chief. Although the court improperly focused on the *Rolon* factors when articulating its initial decision, when considering the court's ruling with every reasonable presumption in its favor, I cannot conclude that the court abused its discretion in denying the defendant's motions because, at its essence, the court found that the defendant had not presented any admissible evidence to support his theory, only self-serving hearsay and conjecture. Although the rape shield statute does permit the introduction of *evidence* of a victim's prior sexual conduct, including reasonable inferences drawn from facts, under limited circumstances, it does not allow a defendant to inject speculation and innuendo into a trial.

The majority opinion renders meaningless the requirement of showing *evidence* of a victim's prior sexual conduct and runs contrary to the purposes and policies advanced by the rape shield statute. See *State* v. *Christiano*, 228 Conn. 456, 472, 637 A.2d 382, cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994). Before the decision of the majority in the present case, defendants were required to provide evidence in the form of testimony from witnesses or documentation to overcome the burden imposed on them by the rape shield statute. A determination of whether the court had abused its discretion had been based on more than a defendant's self-serving statement and proposed questions to the witnesses. See *State* v. *Smith*, supra, 280 Conn. 293–95 (defendant proffered DNA report and substance of expert's testimony in written offer of proof and proffered proposed expert testimony during hearing); *State* v. *Ritrovato*, 280 Conn. 36, 48–49, 905 A.2d 1079 (2006) (defendant proffered proposed testimony of two witnesses during hearing); *State* v. *DeJesus*, 270 Conn. 826, 833, 856 A.2d 345 (2004) (defendant proffered police report and victim's proposed testimony

during hearing held outside presence of jury); *State* v. *Kulmac*, supra, 230 Conn. 51 (proffered written statement of victim); *State* v. *Rinaldi*, supra, 220 Conn. 351 (defendant proffered proposed testimony of complainant's friend at hearing on motion); *State* v. *Williams*, supra, 20 Conn. App. 269 (defendant proffered proposed testimony of victim and mother).

Because of the holding of the majority opinion, in order to overcome the heavy presumption of the rape shield statute which "was enacted specifically to bar or limit the use of prior sexual conduct of an alleged victim of a sexual assault because it is such highly prejudicial material"; (internal quotation marks omitted) *State* v. *Ritrovato*, supra, 280 Conn. 53; all a defendant need do is state that he *believes* that the victim had sexual intercourse with another person and that she made statements to him confirming this belief, without submitting or even proffering any evidence that the prior sexual conduct or the victim's alleged admission actually took place. A defendant can now concoct an unverified narrative, knowing or, as in the present case, having a good faith belief, that the victim will deny the unsubstantiated allegations.[21] He can question the victim about his groundless assertions, thus, allowing the jury to speculate about the sexual propensity of the victim. Moreover, even if the victim denies the allegations during examination, the defendant will be able to use the mere introduction of the topic in closing argument to attack inappropriately the credibility of the victim. This is precisely what the rape shield statute intended to prevent.

The majority attempts to soften its decision by concluding that the testimony of A, B and K regarding the prior sexual conduct of A can be elicited only during the defendant's case-in-chief after a proper foundation has been laid. Ostensibly, that foundation would be laid by the defendant's testimony before the jury at trial. Moreover, by allowing this defendant to question in front of the jury A, B, and K based on his own self-serving statements that are primarily based on inadmissible hearsay and unsubstantiated beliefs, we are diluting the defendant's burden under the rape shield statute to the detriment of all victims of sexual assault. "Requiring, as the statute does, that the strong policies . . . be overcome only by *evidence* which does not have the inherent infirmity of reputation or lay opinion evidence . . . can hardly be viewed as violating [a] defendant's constitutional rights to confront the victim or to present a defense." (Emphasis added.) *State* v. *Jones*, supra, 8 Conn. App. 48. This result cannot be what the legislature envisioned when it enacted the statute. Accordingly, I dissent.

[1] For ease of discussion, I set forth the procedural facts of each offer of proof, followed by an analysis of the court's ruling. I emphasize, however, that I consider the offers of proof collectively to arrive at my conclusion that the court properly concluded that the defendant did not meet his burden of demonstrating that the proffered testimony was admissible under an

exception to the rape shield statute, General Statutes § 54-86f.

[2] See footnote 4 of the majority opinion.

[3] General Statutes § 54-86f provides: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

[4] Grogins did not identify the social worker during oral argument; however, in the discovery packet that she had asserted was the basis for the motion, there was only one social worker report.

[5] Grogins also identified subdivision (2) of § 54-86f, which allows the defendant to offer evidence on the issue of the credibility of the victim, provided the victim has testified on direct examination as to her sexual conduct. See footnote 3 of this dissenting opinion. That subdivision, however, was not raised again during arguments.

[6] The state objected to the question that elicited that portion of the defendant's testimony in which he stated that A had told him that she and K had been having sexual intercourse for several weeks on the ground of hearsay. The question posed to the defendant was: "And did she say anything with regard to that?" Defense counsel responded that it went to the defendant's state of mind as to what he did next and to A's statement to him. After the court heard the answer, it struck that portion of the defendant's testimony.

[7] I disagree with the majority's assertion that the defendant is not required to allege detailed facts to satisfy his preliminary burden that the proffered evidence was relevant. Such a showing is exactly what the defendant must make in his offer of proof. See C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 1.29.4, p. 76 (when making offer of proof, "counsel should . . . [state] the purpose of the offer and [disclose] the *content or purport* of the expected testimony" [emphasis added]).

[8] In acknowledging that the defendant proffered documentary and testimonial evidence that purported to support his position, I do not agree that the evidence actually did so. Rather, I highlight the sufficiency of the first step of the process in order to underscore the disconnect between what was proffered in his motion and what was presented to the court during the hearing.

[9] As support for its contention that the evidence proposed by the defendant at the hearing satisfied his burden to demonstrate that the proposed evidence satisfied one of the exceptions to the rape shield statute, the majority inaccurately attempts to use the fact that I acknowledge that the *offer of proof* was sufficient to warrant a hearing. The majority does not appear to appreciate the nuances of my argument. The offer of proof is merely a "preliminary showing that the evidence sought to be explored in the evidentiary hearing is relevant. . . . That showing must be made as part of the offer of proof *as a prerequisite to obtaining an evidentiary hearing* to determine the admissibility of evidence of the victim's prior sexual conduct." (Emphasis added.) *State* v. *Manini*, supra, 38 Conn. App. 114. By focusing on the fact that I conclude that the defendant satisfied his burden on the written offer of proof, and ignoring the substance of my analysis—that the *actual* proposed evidence put forth during the hearing, as opposed to the representations made during argument of "the evidence the defendant intended to introduce"—was insufficient for admissibility under the rape shield statute, the

majority misses my point.

It is unclear whether the majority is conflating the relevancy determination that is made during the defendant's preliminary offer of proof with the relevancy determination that is made after a hearing, or simply overlooking it. An offer of proof consists of allegations that an attorney represents he could prove if granted an evidentiary hearing. *State* v. *Martinez*, supra, 295 Conn. 771. Thus, at the offer of proof stage, the relevancy determination is based only on the attorney's representations. The hearing, however, is a defendant's opportunity to present to the court the evidence sought to be introduced. The defendant must, at that juncture, prove the relevance of the *actual* proposed evidence. *State* v. *Smith*, supra, 280 Conn. 298. Just because a defendant satisfies the initial burden during the offer of proof does not necessarily mean that the evidence is admissible. A defendant must satisfy both relevancy inquiries in order for the proposed evidence to be admissible. And, as I explain subsequently in this opinion, because the defendant's testimony did not conform to his attorneys' representations of what the evidence would be, and because the substance of the defendant's testimony failed to overcome the burden of the rape shield statute, any questioning of the witnesses about this issue would be improper.

Moreover, the majority's assertion that the trial court did not conduct a sufficient hearing because it precluded the defendant from calling A, B and K fails to take into account, as does the entire opinion, the complete record in order to support its theory. Even presuming that the initial hearing was insufficient, the majority ignores the fact that the defendant failed to take advantage of numerous opportunities to seek an additional hearing. See footnote 17 of this dissenting opinion. If the hearing was insufficient, it was the defendant's doing.

[10] Query why the majority characterizes this testimony as "allegations," as allegations are commonly referenced in the absence of evidence. See Black's Law Dictionary (9th Ed. 2009) (allegation defined as "[s]omething declared or asserted as a matter of fact, esp[ecially] in a legal pleading; a party's formal statement of a factual matter as being true or provable, without its having yet been proved").

[11] The majority recites irrelevant procedural history following the trial court's initial hearsay ruling and ignores the rest of the record. When the state argued that much of the defendant's testimony was inadmissible hearsay, and particularly that A's alleged admission about having sexual intercourse with K for several weeks was hearsay, defense counsel responded that her statement was an admission by a party opponent and that it went to the state of mind of what the defendant did next. The first exception does not apply to A's statement because she was not a party to the action. See Conn. Code Evid. § 8-3 (1). The second exception, arguably the state of mind exception, does not apply because it only goes to the declarant's state of mind, not the listener's. See Conn. Code Evid. § 8-3 (4). Thus, no hearsay exception was argued to the court and the statement is inadmissible hearsay. During argument on the defendant's motion to reconsider, the state repeatedly objected to the introduction of any out-of-court statements of A because they were hearsay and no exception applied. The trial court agreed, stating: "If it had some relevance, I would allow it. . . . All that is . . . speculation . . . and hearsay and not admissible—even under most evidentiary rulings it wouldn't be admissible." Thus, the trial court clearly made an unchallenged ruling regarding the inadmissibility of A's statements.

Moreover, by arguing that the trial court only made a ruling on the relevancy of A's statements, the majority appears to imply that a trial court cannot rule evidence inadmissible on more than one ground. Even if the trial court did rule that the evidence submitted through the defendant's testimony was not relevant, such a holding does not and, indeed, did not preclude it from also excluding the evidence on the ground that it was inadmissible hearsay.

[12] In a further effort to justify the allowance of inadmissible hearsay, the majority claims that "[i]f A testified initially that she did not tell the defendant that she had had sexual intercourse with K while the defendant was in the shower, the defendant could have impeached her testimony with his testimony that she admitted to having sex with K after the defendant confronted her with the cell phone recording." In doing so, the majority fails to cite to the rule of evidence which states that a witness' testimony can be impeached with inadmissible hearsay.

[13] The majority appears to assume that I am claiming that it solely relied on the defendant's testimony of A's inadmissible hearsay to come to its conclusion that the defendant's testimony was relevant. This is not correct.

When the majority addresses the state's argument that the court correctly precluded the proffered evidence because "only by means of impermissible speculation could the jury have found that A's injuries were the result of prior sexual conduct with K," it, erroneously in my opinion, considers all of the defendant's testimony, including the inadmissible hearsay statement of A's alleged admission and irrelevant testimony such as the defendant accompanying B to purchase a video camera. This is an incorrect way to view the evidence and the court's legal conclusion.

[14] Although the rape shield statute was enacted in 1982; Public Acts 1982, No. 82-230; even in 1911, unsubstantiated beliefs about the victim's prior sexual conduct were not admissible.

[15] I observe that the majority fails to discuss the documentary evidence submitted by the defendant in his offer of proof when analyzing whether he has met his burden of proving the admissibility of the evidence of A's prior sexual conduct.

[16] This court has also held that the failure to produce some evidence during the offer of proof and hearing that contradicts a victim's claim that she had not engaged in sexual intercourse rendered the defendant's proffered evidence of the victim's prior sexual acts irrelevant to understanding her motive or bias to fabricate. See *State* v. *Crespo*, 303 Conn. 589, 604–605, 35 A.3d 243 (2012); see also *State* v. *Siering*, 35 Conn. App. 173, 177–78, 644 A.2d 958 (court did not abuse discretion in denying defendant's request to admit evidence of prior sexual conduct of victim where defendant proffered no evidence that contradicted victim's testimony regarding source of injury), cert. denied, 231 Conn. 914, 648 A.2d 158 (1994). In the present case, the defendant would have needed to provide evidence that contradicted the statements contained in the social worker's report and the representations of the state. After his testimony, the court gave the defendant an opportunity to submit the proposed testimony of additional witnesses who could have produced such contradicting evidence, and he failed to take advantage of the opportunity. Thus, inquiry before the jury into this issue also would have been irrelevant.

[17] The majority's assertion that the court did not allow the defendant to question A, B and K when the defendant made his offer of proof is flatly contradicted by the record. The record is replete with instances of the defendant choosing not to move forward with a hearing and the testimony of A, B and K. Those instances include: (1) Jacobson indicating that B would be necessary and that they were not ready for a hearing at that time; (2) the court asking Grogins before the hearing if she intended to offer K as a witness during the hearing, and her stating that the defendant would be the only one to testify; (3) the court explicitly asking, after the defendant testified at the hearing, if there was any other evidentiary testimony, and Grogins, again, declining; (4) during cross-examination of B, Grogins asking that B be excused before making an offer of proof, but never asking for a hearing; and (5) on the motion for reconsideration, the court explicitly stating, "Now, if you want to bring [K] in to make an offer of proof to preserve it for the appellate record . . . that's up to you."

[18] The motion to reconsider also sought reconsideration of the court's ruling with respect to the defendant's motion for presentation of third party culpability evidence, as both motions sought the introduction of the same evidence.

[19] Grogins noted that she would ask K: "If he had sex with [A] in the last three days, prior to the defendant's arrest, if he had an ongoing sexual relationship with [A], if [B] was aware of it, if it was brought to their attention by the defendant, if . . . he was aware that there was video surveillance of their behavior that was instituted by the defendant for the purpose of the fact that the defendant found out and confronted them about their . . . inappropriate sexual behavior." She identified the following questions that she would ask A: "I would like to ask . . . [A], if, one . . . the defendant, ever accused her of having inappropriate behavior with [K], not saying what the inappropriate behavior is, but if he did. If . . . she has knowledge about [K] and [the defendant] not getting along. If she . . . was mad at [the defendant] for what he said about her and [K]. If she thought [the defendant] was lying about what he said [about the inappropriate behavior]. . . . If . . . she was aware if [the defendant] told [B] or made [B] aware of the inappropriate behavior. What was [B's] reaction, if she knows. . . . If [the defendant] wasn't living at your house anymore, then he couldn't be saying lies about you. And lastly, [A], did you have sex with anyone other than [the defendant] three days before this incident?"

[20] The majority's interpretation, in failing to appreciate the difference

between the trial court's ruling that evidence of sibling sex is not admissible *in the presence of the jury* and its invitation to conduct a further hearing *outside the presence of the jury*, renders its reasoning questionable. See footnotes 9 and 12 of the majority opinion. The trial court's initial ruling was that there would be "no reference to sibling sex among these children unless you say, Judge, I have to ask it. I will excuse the jury, and I'll hear your offer at the time." Thus, the trial court prohibited the defendant from any questioning about sexual conduct between A and K in the presence of the jury. The reasonable import of the trial court's ruling, however, was that it would entertain an offer of proof and hearing outside the presence of the jury. Accordingly, the majority's declarations that the trial court's "ruling that the evidence proffered by the defendant was irrelevant and immaterial prevented the defendant from calling A, B and K to testify at a further evidentiary hearing regarding the facts alleged in support of his defense" is questionable for two reasons. First, the defendant *never* again asked for a hearing whereby A, B or K would testify outside the presence of the jury. At the second offer of proof, Grogins asked if she could question B and the court ruled that the line of questioning was irrelevant. At the third offer of proof, the trial court *specifically* stated that the defendant could call K to testify at a hearing.

[21] The majority again misconstrues my argument in stating that my only issue is that the evidence presented by the defendant "was not sufficiently precise to prove conclusively that A engaged in sexual intercourse with K three days before the alleged sexual assault" and that I am asking the "trial court to decide whether the evidence is sufficient to support the defendant's claim that he was not responsible for [A's] injuries." Instead of addressing, with any substance or detail, my substantive analysis, the majority simply characterizes my argument as "unnecessary hyperbole." My point is that the defendant did not satisfy the intentionally high burden that the rape shield statute imposes because the defendant did not put forth evidence that would allow a fact finder to draw permissible inferences with respect to his claim under the first exception of the rape shield statute and was not more probative than prejudicial under the fourth exception. I have never even intimated that the evidence must be conclusive, I only have stressed that if a defendant is going to provide inferential evidence of a victim's prior sexual conduct, the evidence must be such that a jury could make permissible inferences, not resort to speculation. In the present case, the defendant presented nothing more than speculation. Moreover, we are required to examine the court's ruling under an abuse of discretion standard, not substitute our discretion for that of the trial court. This majority decision does eviscerate the rape shield statute because it allows speculation to be put before a jury.

--------------------------------